608 So.2d 987 (1992)
Dennis D. GREGORY, D.C., et al.
v.
LOUISIANA BOARD OF CHIROPRACTIC EXAMINERS.
No. 92-CA-0742.
Supreme Court of Louisiana.
November 30, 1992.
Richard P. Ieyoub, Atty. Gen., James M. Ross, Baton Rouge, for applicants.
Robert E. Morgan, Lake Charles, for respondent.
LEMMON, Justice.
This is an action by five chiropractors and a chiropractic clinic attacking La.Rev. *988 Stat. 37:1743 as an infringement upon their freedom of commercial speech. The Louisiana Board of Chiropractic Examiners, a state agency with exclusive authority under La.Rev.Stat. 37:2804 to administer the laws and regulations governing the licensing of chiropractors and the practice of chiropractic, has appealed directly to this court from the trial court's judgment declaring the statute unconstitutional. La. Const. art. V, § 5 D.
Prior to the enactment of La.Rev.Stat. 37:1743 in 1991, plaintiffs engaged in separate commercial advertising programs in which they sent out direct mail solicitation letters to persons who had recently been in vehicular accidents. Plaintiffs obtained the information about the persons involved in the accident by purchasing accident reports from various police departments. When the report indicated that anyone was injured or that the damage was moderate or heavy, plaintiffs sent form letters of solicitation to every person involved in the accident. Before mailing the letters, plaintiffs submitted the form letters to the Board and incorporated any changes required by the Board. The form letters read as follows:
If you've ever been involved in an automobile accident you are probably aware of the pain and discomfort that can result days, weeks, and even months after an accident.
If you or a friend or family member become involved in an accident and are suffering from NECK PAIN, BACK PAIN, ARM AND SHOULDER PAIN, LEG PAIN, NUMBNESS, HEADACHES, OR DIZZINESS, please contact my office as soon as possible for further information regarding how we may help you.
The following are the five most dangerous words:
MAYBE IT WILL GO AWAY
 Signature
INITIAL CONSULTATION ALWAYS FREE
* * * * * Many auto policies cover the total treatment cost for care. If someone else caused the accident, you can collect 100% medical care. Any questions? Callwe will be happy to help.
POLICY LIMITATIONS APPLY
FREE TRANSPORTATION
We offer free transportation to and from our clinic in the Baton Rouge Area.
If the contents of this letter of [sic] any way offends you, please disregard with our apologies.
In 1991 the Legislature enacted La.Rev. Stat. 37:1743 by La.Acts 1991, No. 707, restricting chiropractors and other health care providers from direct solicitation of patients or potential patients as follows:
A. A health care provider or person designated, contracted, or paid by the health care provider, shall not directly solicit by phone or mail, patients or potential patients who, because of their particular circumstances, are vulnerable to undue influence. Circumstances in which patients or potential patients may be considered to be vulnerable to undue influence include but are not limited to:
(1) When a person is known to the health care provider to have recently been involved in a motor vehicle accident.

(2) When a person is known to the health care provider to have recently been involved in a work-related accident.
(3) When a person is known to the health care provider to have recently been injured by another person or as a result of another person's actions.
B. Nothing in this Section shall be construed to prohibit advertising, except that which is false, misleading, or deceptive, nor to prohibit outreach services for prenatal, postpartal, child health care, and communicable disease control.
C. As used in this Section "health care provider" means any "health care provider" as defined in R.S. 40:1299.41. (emphasis added).
After the enactment of Act 707, plaintiffs filed this action to enjoin the Board from implementing the statute. By agreement of the parties the rule for preliminary *989 injunction was converted into a hearing on a final injunction. At the hearing plaintiffs introduced the form letters used in their advertising programs and the testimony of two plaintiff-chiropractors, the administrator of plaintiff-clinic, and an expert in medical marketing and advertising.
The trial court found that the form letters were not misleading and did not constitute false advertising so as to justify an absolute ban. The court further declined to develop guidelines to be used by the Board in regulating the content of direct solicitation letters. Declaring the statute to be unconstitutional as an abridgement of plaintiffs' freedom of commercial speech, the court noted that the governmental interest in protecting persons vulnerable to undue influence after a vehicular accident did not outweigh the constitutional protection of the right of commercial speech. Hence this appeal.
La. Const. art. I, § 7 and U.S. Const. amend. I prohibit the making of laws abridging, curtailing or restraining the freedom of speech. Commercial speech is expression that is related solely to the economic interests of the speaker and the speaker's audience. Virginia Pharmacy Board v. Virginia Citizens Consumer Council, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Commercial speech may assist consumers by furthering society's interest in the fullest possible dissemination of commercial information, and therefore is entitled to constitutional protection, although not necessarily to the same extent as other speech.[1]Id.
A state may prohibit commercial speech which is false, deceptive or misleading, Friedman v. Rogers, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979), or which proposes an illegal transaction, Pittsburgh Press Co. v. Human Relations Commission, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). But commercial speech that is not false or deceptive and does not concern unlawful activities may be restricted only in the service of a substantial governmental interest and only through means that directly advance that interest. Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).[2]
Certain types of commercial speech are especially susceptible to potential abuse by misleading or deceptive information. In advertising to sell professional services, unlike advertising to sell laundry detergent or automobile tires, the public has little knowledge of the nature, extent or quality of *990 such services. Moreover, there is no standardized product. The potential for misleading and deception is particularly significant in advertising for professional services, and the Supreme Court of the United States has addressed the subject extensively.
In Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Court invalidated an absolute prohibition on advertising by lawyers, holding that lawyer advertising is a form of protected commercial speech which may not be subjected to blanket suppression unless false, deceptive or misleading. The Court specifically held that advertising of fees charged for certain "routine legal services" was not inherently misleading and could not be prohibited on that basis, but pointed out that the case involved neither person-to-person solicitation nor advertising as to the quality of legal services. The Court therefore left open the question whether advertising claims as to the quality of professional services may be so likely to be misleading as to warrant restriction.[3]
In dissent Justice Powell argued that advertising of undefined "routine legal services" is vastly different from price advertising of a standardized product such as the prepackaged prescription drugs in the Virginia Pharmacy Board case. The advertising of professional services also implicates the vastly increased potential for deception and the enhanced difficulty of effective regulation in the public interest. The dissenter concluded that the great risk of public deception was not justified by the marginal First Amendment interests involved.
In Ohralik v. Ohio State Bar Association, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), the Court upheld a rule barring in-person solicitation by attorneys, holding that the rule could be applied constitutionally to an attorney who approached two young accident victims at a time when they were especially incapable of making informed judgments or of assessing and protecting their own interests.[4] The Court thus recognized the state's interest in protecting the "unsophisticated, injured or distressed lay person" from "those aspects of solicitation that involve fraud, undue influence, intimidation, overreaching and other forms of `vexatious conduct'" by lawyers.[5]Id. at 462, 98 S.Ct. at 1921. The concurring opinion expressed approval of solicitation by truthful information and advice presented in a "non-coercive, nondeceitful and dignified manner" to a potential client emotionally and physically capable of making a rational decision. Id. at 472, 98 S.Ct. at 1927 (Marshall, J. concurring).
In In re Primus, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978), a lawyer cooperating with the American Civil Liberties Union offered ACLU's representation to a woman who had been sterilized as a condition of receiving public medical assistance. The Court distinguished Ohralik (decided the same day) on the basis of the nature of the interest involved, Primus being solicitation for a non-profit organization which engaged in litigation as a form of public expression while Ohralik was a solicitation for private gain. The Court significantly noted that the form of the solicitation was by letter, rather than the face-to-face solicitation of Ohralik.[6]
*991 In In re R.M.J., 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982), the Court examined a disciplinary rule restricting lawyer advertising in Missouri to certain categories of information and in some instances to certain specified language, as well as another rule regulating the use of professional announcement cards. Reiterating that misleading commercial speech may be banned completely while truthful advertising for professional services is constitutionally protected, the Court held that a state may not place an absolute prohibition on potentially misleading information when the information can be presented in a nondeceptive manner, but may only impose appropriate restrictions reasonably necessary to prevent deception. Furthermore, even when the communication is not misleading, the state may regulate the communication to the extent necessary to further a substantial governmental interest. As to the restriction on mailing announcement cards (in this case, announcing the opening of an office) only to lawyers, clients, former clients, personal friends and relatives, the Court held that the state failed to show that some less restrictive regulation (such as requiring the filing with the Advisory Committee of a copy of all general mailings) would not be sufficient to serve the asserted governmental interest.
In Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985), the attorney placed a newspaper advertisement advising users of the Dalkon Shield IUD that it was not too late to take legal action and that his firm was handling such cases on a contingent fee basis. He was charged with violating disciplinary rules which prohibit a lawyer's recommending employment of himself and accepting employment which results from giving unsolicited advice to a layman to take legal action. Emphasizing the distinction between written advertising and telephone or in-person communications, the Court pointed out that while in-person solicitation for pecuniary gain is a practice rife with possibilities for overreaching, invasion of privacy, undue influence and outright fraud, print advertising is more conducive to reflection and the exercise of choice on the part of the consumer. The Court held the state had failed to establish that the prohibitions imposed by the disciplinary rules were necessary to achieve the governmental interest in preventing lawyers from stirring up meritless litigation against innocent defendants, remarking that the advertising at issue had none of the vices sought to be suppressed. The Court stated "[a]n attorney may not be disciplined for soliciting legal business through printed advertising containing truthful and nondeceptive information and advice regarding the legal rights of potential clients."[7]
In Shapero v. Kentucky Bar Association, 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988), the lawyer had proposed to send the following letter to persons who have had foreclosure suits filed against them:
It has come to my attention that your home is being forclosed on. If this is true, you may be about to lose your home. Federal law may allow you to keep your home by ORDERING your creditor [sic] to STOP and give you more time to pay them.
You may call my office anytime from 8:30 a.m. to 5:00 p.m. for FREE information on how you can keep your home.

*992 Call NOW, don't wait. It may surprise you what I may be able to do for you. Just call and tell me that you got this letter. Remember it is FREE, there is NO charge for calling.
The Kentucky Attorneys Advisory Commission rejected the proposed letter on the basis of a Kentucky Supreme Court Rule that prohibited written advertisements "precipitated by a specific event or occurrence involving or relating to the addressee or addressees as distinct from the general public." Noting that (1) in-person solicitation is "a practice rife with possibilities for overreaching, invasion of privacy, the exercise of undue influence, and outright fraud," 486 U.S. at 475, 108 S.Ct. at 1922, quoting Zauderer, and (2) the unique difficulties of in-person solicitation, generally not visable or otherwise open to public scrutiny, would frustrate any attempt at state regulation short of an absolute ban, the Court stated that targeted direct-mail solicitation is distinguishable in both respects. The Court concluded that the state can regulate abuses and minimize mistakes by less restrictive means than an absolute ban, such as by requiring solicitation letters to be filed first with a state agency.
In the present case the advertising involves a lawful activity and is not misleading. Nevertheless, the state argues that the restriction is justified by the governmental interests in (1) reducing unnecessary medical treatment, (2) reducing insurance costs, and (3) protecting citizens from possible overreaching by health care providers' attempting to influence people to seek medical aid.
The state has a substantial governmental interest in reducing unnecessary medical treatment and in reducing insurance costs. Nevertheless, the state has not shown that an outright ban on targeted mail solicitations to recent victims of motor vehicle accidents is necessary to achieve this objective. Whether a solicitation letter promotes the incurring of unnecessary medical treatment depends upon the content of the letter, and the asserted governmental interests can be served by less restrictive means such as requiring mail solicitations to be filed with and reviewed by a governmental agency before mailing.
The state also has a substantial interest in protecting its citizens from possible overreaching by a health care provider's attempting to influence people to seek medical aid. The Board argues that La.Rev. Stat. 37:1743 does not prohibit general advertising by chiropractors or random letters advertising chiropractic service, but only bans telephone and mail solicitations of persons subject to undue influence because of recent involvement in vehicular accidents. The Board relies on National Funeral Services v. Rockefeller, 870 F.2d 136 (4th Cir.1989), in which the court determined that West Virginia statutes prohibiting in-person and telephone solicitations of preneed funeral contracts were valid and reasonable means of promoting the state's interests in discouraging fraud and protecting the consumers' privacy by preventing "overreaching and high pressure sales tactics of this most unique product." Id. at 142. Because of the highly sensitive and personal nature of funeral services and the potential for undue influence, overreaching, invasion of privacy and fraud, the court determined that the commercial speech at issue was particularly intrusive and that in-person and telephone solicitations of funeral contracts could be prohibited by the state. Id. at 143.
The National Funeral Services decision dealt with in-person and telephone solicitation, rather than the targeted direct mail solicitation involved in the present case. The Supreme Court has specifically distinguished solicitation by mail from personal solicitation, even when the mail solicitation is targeted at potential clients who are known to face particular legal problems. See Shapero v. Kentucky Bar Association, 486 U.S. at 476, 108 S.Ct. at 1923, 100 L.Ed.2d 475 (1988), which noted that while personal solicitation involves significant opportunities for overreaching and undue influence, the recipient of a targeted direct mail solicitation can discard or ignore the letter, or put it aside for further consideration. The Court in Shapero accordingly concluded that targeted mail solicitations could generally be regulated by the state *993 through less restrictive and more precise means than a total ban, such as by requiring submission of letters of solicitation to a state agency for approval and restricting or penalizing only those letters which were abusive.
Similarly in the present case, abuses can be controlled and mistakes can be prevented by less restrictive means than a blanket ban on direct mail solicitations which are targeted at recent accident victims. While the state is not required to use the least restrictive means of regulating commercial speech, Board of Trustees of the State University of New York v. Fox, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), the state is required to choose a reasonable means of regulation which is in proportion to the interest that is served. Written information about chiropractic services can be presented in a nondeceptive manner, and the state may only impose restrictions reasonably necessary to prevent deception. In re R.M.J., 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982). The interference with commercial speech in the statute at issue is broader than is necessary to prevent the evil feared by the Board. Although telephone solicitation is in-person solicitation and a total ban on such solicitation may be permissible, such an extensive restriction on targeted direct mail solicitation is not.
The Board in the present case can promulgate rules pertaining to targeted direct mail solicitation by health care providers and can oversee compliance with those rules, thereby protecting the public from overreaching, undue influence and fraud while preserving the commercial speech rights of health care providers.[8] Such a reasonable restriction balances the value of the free flow of commercial information with the legitimate governmental interest in protecting citizens who are vulnerable to undue influence. A limited restriction more reasonably fits the state's legitimate interest, whereas the statute's complete ban on direct mail solicitation targeted at accident victims is too extensive to be deemed a reasonable "fit." Board of Trustees of the University of New York v. Fox, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989).
Plaintiffs did not seek a declaration of unconstitutionality as to the restriction on telephone solicitations. Because the portion of the statute pertaining to telephone solicitations is severable from the portion pertaining to direct mail solicitations, only the latter need be struck as violative of plaintiffs' commercial speech rights. The trial court should have merely struck the words "or mail" from La.Rev.Stat. 37:1743 A.
Accordingly, the judgment of the trial court is amended to declare the unconstitutionality only of the portion of La.Rev.Stat. 37:1743 A which contains the words "or mail" and to strike the words "or mail" from the statute. As amended, the judgment is affirmed.
LEMMON, J., assigns additional concurring reasons.
LEMMON, Justice, concurring.
The majority decision striking an absolute ban on direct mail solicitations for professional service employment to recent accident victims is compelled by Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, All 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985), and Shapero v. Kentucky Bar Association, 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988). Nevertheless, I believe, along with the dissenters in those cases, that greater deference should be accorded to the state's legitimate effort to regulate advertising for professional services because of the vastly greater difficulty for a lay person to evaluate the quality of professional services than the quality of standardized *994 consumer products, and because the consequences of a mistaken evaluation of a "free sample" of professional services may be much more serious. See Shapero v. Kentucky Bar Association, 486 U.S. at 481, 108 S.Ct. at 1926 (O'Connor, J., dissenting).
The particular problem in this case is that the use of unsolicited professional advice to entice clients into a consultation raises the same risks of undue influence and overreaching as in-person solicitation because of the professional's pecuniary self-interest that prompted the advertising. Personalized letters of solicitation from professional health care providers to accident victims are intended to convey the impression that the sender has knowledge about and concern for the victim rather than for an increase in business. This itself hints of deception. Imposing unsolicited professional advice on a layman who appears to need particular professional services misleads the victim as to the quality of and need for those services. Because of the susceptible position of the recipients, such advice implicates or leads to many of the evils of in-person solicitation. And the primary pecuniary motive for the advice undermines the professional judgment that the victim has the right to expect from the professional health care provider.
The medical profession, like the legal profession, is founded on a service orientation rather than a commercial orientation. The sad commentary on lawyer advertising is that the accompanying dramatic increase in emphasis on commercialism in the practice of law has led to a corresponding decline in professionalism. The fact that many professionally oriented lawyers have been forced into advertising in order to meet the competition only compounds the general problem that advertising for professional services frequently tends to mislead more than to inform. This is an area where an absolute bar on personal contact for solicitation of employment may be required by the substantial governmental interest involved.
NOTES
[1] In Virginia Pharmacy Board, the Court struck down a prohibition against a pharmacist's advertising the price of prescription drugs.
[2] In the Central Hudson case, an electric utility company challenged a complete ban on advertising to promote the use of electricity. The Commission had issued the ban on the basis that promotional advertising to increase the use of electricity was contrary to the national policy of conserving energy. The Court announced a four-part analysis to be applied in commercial speech cases: (1) whether the expression concerns lawful activity and is not misleading, thereby deserving first amendment protection; (2) whether the asserted governmental interest is substantial; (3) whether the regulation directly advances the asserted governmental interest; and (4) whether the regulation is more extensive than necessary to serve the asserted governmental interest. Id. at 566, 100 S.Ct. at 2351. Concluding that the advertising which involved legal activity was not misleading and that the regulation furthered the state's substantial interest in conserving energy, the Court held that complete suppression of promotional advertising was more extensive regulation than necessary to serve the governmental interest in conserving energy, the state having failed to establish that the governmental interest could not be adequately protected by more limited regulation.

The Court clarified the fourth prong of the Central Hudson analysis in Board of Trustees of the State University of New York v. Fox, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), a case in which a company prohibited from demonstrating housewares at a party hosted in a student dormitory attacked the university's rule barring commercial enterprises from operating in its facilities. The Court held that the state may only impose restrictions which are narrowly tailored to achieve the desired objective and which exhibit a reasonable "fit" between the regulation chosen and the state's goals. This requirement of a reasonable fit, however, does not necessitate the state's choosing the least restrictive alternative as its means of regulation. Id. at 480, 109 S.Ct. at 3034-35. The burden of proof is on the state to establish that the fit is reasonable. Id.
[3] The Court added that an appropriate disclaimer may be required in some cases of lawyer advertising in order to reduce the possibility of consumer confusion or deception.
[4] The lawyer solicited one victim while she lay in traction in a hospital bed and then used the information from and agreement with the first victim to induce a contract from the second victim. The lawyer emphasized that his fee would come out of recovery, without informing the victim that she would be responsible for expenses, thereby making the services appear to be cost-free.
[5] The Court thus recognized the state's interest sought to be protected in the present case, holding that a ban on in-person solicitation by lawyers (with the inherent potential of uncontrollable overreaching) did not offend the Constitution.
[6] The Court stated:

The transmittal of this letteras contrasted with in-person solicitationinvolved no appreciable invasion of privacy; nor did it afford any significant opportunity for overreaching or coercion. Moreover, the fact that there was a written communication lessens substantially the difficulty of policing solicitation practices that do offend valid rules of professional conduct.
436 U.S. at 435-36, 98 S.Ct. at 1906-07.
Greater protection from in-person solicitation, as compared to general advertising, is necessary because of the greater opportunity for the lawyer to exert pressure for an immediate response from a prospective client who has little time for reflection, the lesser opportunity for the Bar to supervise such solicitations, and the lesser opportunity for public scrutiny of personal solicitations in private. 3 Ronald D. Rotunda et al, Treatise on Constitutional Law § 20.31 (1986).
[7] As to the requirement that the lawyer disclose that clients will have to pay costs of unsuccessful contingent fee litigation, the Court noted that disclosure requirements trench more narrowly on the advertiser's interests than flat prohibitions and may be appropriate to dissipate the possibility of consumer confusion or deception. Accordingly, an advertiser's right may be adequately protected by disclosure requirements which are reasonably related to the state's interest in preventing deception of consumers.
[8] For example, the Board may consider requiring that all letters be prominently identified as an ADVERTISEMENT; that all letters be submitted to the Board for approval before mailing; that copies of all letters be retained by the sender for a reasonable period; and that the letter advise the recipient of the importance of employing a health care provider and suggest inquiry into the provider's qualifications and experience. Moreover, the question whether the Board may impose a ban on written solicitations to an accident victim for a specified reasonable period immediately following the accident is not presented in this case.