STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-610

GLENN M. HEBERT

VERSUS

LOUISIANA LICENSED PROFESSIONAL
VOCATIONAL REHABILITATION COUNSELORS AND
SY ARCENEAUX

**************
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. 20064643
HONORABLE BYRON HEBERT, DISTRICT JUDGE

**************
SYLVIA R. COOKS
JUDGE
**************

Court composed of Chief Judge Ulysses Gene Thibodeaux, Sylvia R. Cooks, Billy H. Ezell, Judges.

REVERSED.

R. Scott Iles
P.O. Box 3385
Lafayette, Louisiana 70502
1200 West University
Lafayette, Louisiana 70506
(337) 234-4080
COUNSEL FOR PLAINTIFF/APPELLANT:
 Glenn M. Hebert

David A. Hurlburt
Hurlburt, Privat & Monrose
Post Office Drawer 4407
Lafayette, Louisiana 70501
(337) 237-0261
COUNSEL FOR DEFENDANT/APPELLEE:
 Sy Arceneaux

**Stephen W. Glusman**
**Glusman, Broyles & Glusman, LLC**
**P.O. Box 2711**
**Baton Rouge, Louisiana 70821**
**(225) 387-5551**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
> **Louisiana Licensed Professional Vocational**
> **Rehabilitation Counselors Board of Examiners**

**COOKS, Judge.**

### STATEMENT OF THE FACTS

Julius Jeansonne was injured while engaged in the course and scope of his employment. His employer hired Sy Arceneaux to provide Mr. Jeansonne with vocational rehabilitation services. Mr. Jeansonne then hired Glenn M. Hebert, another vocational rehabilitation counselor, to assess the rehabilitation work which had been performed thus far by Mr. Arceneaux and to identify additional work opportunities. Mr. Hebert found the rehabilitation work performed by Mr. Arceneaux below acceptable standards and dubbed it "sham rehabilitation" as that term was used by this court in *Maxie v. Brown Industries,* 95-19 (La.App. 3 Cir. 5/31/95), 657 So.2d 443, *writ denied*, 95-1630 (La. 10/6/98), 661 So.2d 469. Mr. Hebert communicated his assessment to Mr. Jeansonne in two separate letters.

Mr. Arceneaux "took offense to the opinions expressed by Mr. Hebert" concerning his work and sought redress for his grievance by bringing his complaint before the Louisiana Licensed Professional Vocational Rehabilitation Counselors Board of Examiners (the Board). Mr. Arceneaux appeared before the Board and testified with respect to his complaint against Mr. Hebert. The Board found Mr. Hebert violated §1604, Canon 4 (A)(7) which provides: [1]

> Licensed rehabilitation counselors will not discuss the competency of other rehabilitation counselors or agencies (including judgments made, methods used or quality of rehabilitation plans) in a disparaging way with their clients.

The Board issued an official reprimand to Mr. Hebert and required him to complete a pre-approved course of study in ethics. The Board directed that the course of study must be submitted for prior approval and must be completed within six

---

[1] The Code of Professional Ethics for Licensed Rehabilitation Counselors is found in the Louisiana Administrative Code, Title 46, Part LXXXVI, Chapter 16.

1

months of the final decision of the Board. The Board warned Mr. Hebert that failure to complete the course of study would result in further sanctions.

Mr. Hebert then filed suit in district court for mandamus and damages against Mr. Arceneaux and the Board. The petition alleged Mr. Arceneaux and the Board "conspired through an abuse of process to obtain ethical action by way of an ethical complaint." The petition sought damages for libel and a dismissal of the ethical complaint. The Board filed exceptions of improper venue, failure to exhaust administrative remedies, lack of subject matter jurisdiction, failure to state a cause of action and res judicata. Mr. Arceneaux filed a special motion to strike under La.Code Civ.P. art. 971.

On December 4, 2006, the trial court granted Mr. Arceneaux's motion to strike under La.Code Civ.P. art. 971 and dismissed Mr. Hebert's claim against him. The trial court also awarded $5,000 in attorney's fees as mandated under the statute. The Board's exceptions were set for hearing on January 29, 2007. Prior to the hearing, the trial court determined that venue in Lafayette Parish for a claim against the Board was only proper if Mr. Arceneaux was a defendant. Since Mr. Arceneaux was dismissed from the suit, the trial court signed a judgment dismissing "without prejudice" Mr. Hebert's petition against the Board on the basis of improper venue. The other pending exceptions filed by the Board were not addressed. Mr. Hebert filed this appeal. For the reasons assigned below, we reverse the judgment of the trial court dismissing the Board and Mr. Arceneaux and remand for amendment of the pleadings and further proceedings consistent with this opinion.

### Applicability of Motion to Strike under La.Code Civ.P. art. 971

Mr. Hebert filed suit against the Board and Mr. Arceneaux seeking damages for libel and "abuse of process." We have examined Mr. Hebert's petition and find he

2

has articulated, though inartfully, sufficient facts to allege the Board and Mr. Arceneaux acted in concert to infringe on his constitutional right. The facts as pled clearly evidences Mr. Hebert is claiming that the Defendants violated his right to freely communicate with Mr. Jeansonne without reprisal or public reprimand. In response, Mr. Arceneaux filed a Motion to Strike under La.Code Civ.P. art. 971 which provides, in relevant part:

> (A)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
>
> (2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
> . . . .
> (B) In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney's fees and costs.
> . . . .
> (F) As used in this Article, the following term shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
>
> (1) "Act in furtherance of a person's right of petition or free speech of the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:
>
> (a) Any written or oral statement or writing made before a legislative, executive or judicial proceeding, or any other official proceeding authorized by law.
>
> (b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.

Mr. Arceneaux correctly asserts the intent of this statute is to encourage an open exchange of information and ideas and to insure that an individual's right to speak out on a public issue will not be chilled by frivolous lawsuits. *Lamz v. Wells*, 05-1497 (La.App. 1 Cir. 6/9/06), 938 So.2d 792; *Stern v. Doe*, 01-914 (La.App. 4 Cir.

3

12/27/01), 806 So.2d 98; *Davis v. Benton*, 03-851 (La.App. 1 Cir. 2/23/04), 874 So.2d 185. Mr. Arceneaux contends he was ethically bound to report any alleged violations of the Code of Ethics to the Board and Mr. Hebert's lawsuit suppresses his right to speak out on a public issue. Mr. Arceneaux admits he "took offense to the opinions expressed by Mr. Hebert" regarding his work. He sought redress for his grievance by using the Board process to vindicate his personal grievance against Mr. Hebert.

Mr. Hebert alleges the Board and Mr. Arceneaux acted in concert to suppress his right to voice his opinion. The Constitution protects individuals from governmental interference with their First Amendment rights and creates a cause of action against those individuals acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to accomplish this end. *See* 42 U.S.C. § 1983. Private individuals are subject to liability in situations when the individual acts as a "willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 186 (1980). "A conspiracy between the private individual and state actors to achieve a common goal of depriving an individual of [constitutional] rights will suffice to establish that the private defendants acted under color of state law. *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 435 (7 Cir. 1986). Mr. Arceneaux does not deny he brought his complaint to the Board and was a willing participant along with the Board in the process which sanctioned Mr. Hebert for expressing his opinion regarding the work performed by Mr. Arceneaux. Mr. Arceneaux urges, however, he is immune from suit and is entitled to rely on La.Code Civ.P. art. 971 in seeking to strike Mr. Hebert's petition.

First, we find Mr. Arceneaux's reliance on La.Code Civ.P. art. 971 is misplaced. This statute was intended to remedy abuses in the legal system and to prevent individuals from using a judicial proceeding or administrative process to

4

"chill the valid exercise of constitutional rights of freedom of speech." We do not believe the legislature in enacting La.Code Civ.P art. 971 intended to bar parties seeking redress for violations of their First Amendment rights by the State, and others acting in concert with the State, from filing legitimate civil rights suits. In addition, La.Code Civ.P. art. 971 is unavailable to strike a plaintiff's petition when there is a probability of success on the claim raised in the pleadings. Mr. Hebert's complaint attacks the Board's authority on the behest of Mr. Arceneaux and under "color of state law" to sanction him for commenting on the substandard quality of Mr. Arceneaux's services. The Board insists that it acted in conformity with the authority granted to it by the State of Louisiana and the national standards applicable to vocational rehabilitation counselors.

### *Authority of the Board*

The Louisiana Licensed Professional Vocational Rehabilitation Counselors Board of Examiners was created under the Department of Health and Hospitals. La.R.S. 37:3441-3452. The legislature determined "that activities of those persons who render service to the public in the rehabilitation counseling area and use the title 'licensed professional vocational rehabilitation counselor' should be regulated for the protection of public health, safety, and welfare." La.R.S. 37:3442. The primary obligation of the vocational rehabilitation counselor is to assist the client "through the counseling relationship, to define vocational goals, and to plan actions reflecting his or their interests, abilities, aptitudes, and needs." La.R.S. 37:3443(3)(a). The profession is statutorily tied to the workers' compensation scheme.[2] The work of the vocational rehabilitation counselor serves an essential public function and is

---

[2] The workers' compensation statute provides an injured worker is entitled to prompt rehabilitation services by a licensed professional vocational rehabilitation counselor. La.R.S. 23:1226(A).

5

"designed to address and to alleviate certain social problems" by maximizing medical recovery and assisting an injured worker in obtaining suitable and fulfilling work. *Maxie,* 657 So.2d at 448.[3]

The legislature authorized the Board to promulgate rules and regulations, including a code of ethics, in keeping with the stated goals defined in the Act.

Louisiana Revised Statutes 37:3445, provides, in relevant part:

D. The board shall adopt such rules, regulations, and examination procedures as it may deem necessary to effect the provisions of this Chapter. The board shall adopt the Code of Ethics of the National Association for Rehabilitation Professionals in the Private Sector, including any revisions or additions deemed appropriate or necessary by the board.

The Board was also given the power to discipline for violations of the regulations. Louisiana Revised Statutes 37:3449 provides, in relevant part:

A. The board by affirmative vote of at least four of its five members, shall withhold, deny, revoke, or suspend any license issued or applied for in accordance with the provisions of this Chapter or otherwise discipline a licensed professional vocational rehabilitation counselor upon proof that the applicant or licensed professional vocational rehabilitation counselor:
. . . .

(2) Has violated the code of ethics adopted by the board.

Pursuant to its legislative authority, the Board adopted the Code of Professional Ethics for Licensed Rehabilitation Counselors, which are intended to further the "primary obligation of licensed rehabilitation counselors . . . to their clients (defined in the Code as individuals with disabilities who are receiving services from licensed

---

[3] The *Maxie* case recognized under the workers' compensation scheme the employer is responsible for selecting and compensating the vocational rehabilitation counselor. La.R.S. 23:1226(B)(3)(a). This fact ofttimes creates what *Maxie* defined as "an irreconcilable conflict" between the employer's interest in terminating benefits and the injured worker's interest in obtaining suitable and productive work. However, the Act and the Code of Ethics make it abundantly clear that the rehabilitation counselor's primary obligation is to the injured employee, not the employer. A vocational rehabilitation counselor is not shielded from liability under the workers' compensation statute for negligence, as are the employers who hired them. *See Brown v. Adair*, 02-2028 (La. 4/9/03), 846 So.2d 687, which held the immunity provisions of the workers' compensation act did not bar suit for malpractice against a vocational rehabilitation counselor.

rehabilitation counselors)." *See* Code of Ethics, General Provision §1600 (B). The subject of this dispute is found in §1604, Canon 4 (A)(7), which provides: [4]

> Licensed rehabilitation counselors will not discuss the competency of other rehabilitation counselors or agencies (including judgments made, methods used or quality of rehabilitation plans) in a disparaging way with their clients.

This canon prohibits a vocational rehabilitation counselor from discussing "in a disparaging way" the "judgments made, methods used or quality of rehabilitation plans" of another counselor. An unfavorable opinion regarding the competency of another vocational rehabilitation counselor cannot be communicated to the injured employee. "Discussion" of favorable opinions are not subject to discipline, only unfavorable opinions. In this case, Mr. Hebert was consulted for a second opinion regarding the services rendered by Mr. Arceneaux. In two separate letters sent to Mr. Jeansonne, Mr. Hebert opined the services provided by Mr. Arceneaux fell below acceptable standards. He was disciplined for his opinion.

It is undisputed the Board has authority to govern the profession of vocational rehabilitation counselors. There is no question the states have an "interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016

---

[4] This provision is modeled on the Code of Ethics for the National Association for Rehabilitation Professionals in the Private Sector, Section B8, which provides, in relevant part:
(a) Forensic Rehabilitation Experts/Consultants will not discuss in a disparaging way the competency of other professionals or agencies. Differences in opinions, findings, methods, or plan development should be made based on work product, not on the individual or agency.
(b) When evaluating or commenting upon the professional work product or qualifications of another expert or party to a legal proceedings, Forensic Rehabilitation Experts/Consultants represent their professional disagreements with reference to a fair and accurate evaluation of the data, disagreements with reference to a fair and accurate evaluation of the data, theories, standards, and opinions of the other expert or party.

(1975). However, "even when the Legislature has properly delegated to an agency certain administrative or ministerial authority, *the regulations promulgated by the agency may not exceed the authorization delegated by the Legislature*" or violate constitutional provisions. *State v. Alfonso*, 99-1546, p. 8, (La. 11/23/99), 753 So.2d 156, 162. (emphasis in original). An agency is "not free to pursue any and all ends, but can assert authority only over those ends which are connected to the task delegated by the legislative body." *Id.; Realty Mart, Inc. v. Louisiana Bd. of Tax Appeals,* 336 So.2d 52 (La.App. 1 Cir. 1976).

A regulation promulgated by a licensing Board which restricts a professional's right to communicate may infringe upon the right to free speech guaranteed by the United States and this State's Constitutions. Such regulation, therefore, is subject to strict judicial scrutiny. Under a strict scrutiny analysis, the State has the burden of proving the restriction on speech is narrowly tailored to serve a compelling state interest. *Republican Party of Minnesota v. White,* 536 U.S. 765, 122 S.Ct. 2528 (2002); *Citizens Against Rent Control v. City of Berkeley,* 454 U.S. 290, 102 S.Ct. 434 (1981); *State v. Expunged Record*, 03-1940 (La. 7/2/04), 881 So.2d 104; *Brown v. State*, 96-2204 (La. 10/15/96), 680 So.2d 1179. For a provision to be narrowly tailored the State must demonstrate it does not "unnecessarily circumscrib[e] protected expression." *Brown v. Hartlage*, 456 U.S. 45, 54, 102 S.Ct. 1523, 1529 (1982). The courts have, on numerous occasions, found the right of the professional to First Amendment protection trumps the interest asserted by Boards for imposing a restriction on speech. In the area of commercial speech, the United States Supreme Court in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817 (1976), invalidated as unconstitutional a regulation which prohibited pharmacists from advertising the price of drugs recognizing a

8

paramount societal interest in the "fullest possible dissemination of commercial information." *Gregory v. Louisiana Bd. of Chiropractic Examiners,* 608 So.2d 987 (La.1992) invalidated a Board regulation which banned the solicitation of clients by mail. The Louisiana Supreme Court held a "limited restriction more reasonably fits the state's legitimate interest [to protect the public from overreaching health care providers], whereas the statute's complete ban on direct mail solicitation targeted at accident victims [was] too extensive to be deemed a reasonable 'fit.'" *Id.* at 993. *See also Speaks v. Kruse*, 445 F.3d 396 (5 Cir. 2006). In *Brown,* 680 So.2d 1179, the Louisiana Supreme Court found a statute unconstitutional which prohibited contributions from members of the gaming board, board employees or casino operators to a candidate. While noting gambling is strictly regulated, the supreme court, nevertheless, found "the State may not ban commercial speech simply because the State may constitutionally prohibit [gambling]" and further held "[t]he First Amendment clearly prohibits suppression of information." *Id.* at 1183. (citations omitted).

Particularly repugnant to the First Amendment are regulations which target content-based speech. "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of ideas or views expressed are content-based." *Turner Broadcasting System, Inc. v. Federal Communications Commission*, 512 U.S. 622, 643, 114 S.Ct. 2444 (1993) "[T]he First Amendment, subject only to narrow and well-understood exceptions, does not contenance governmental control over the content of messages expressed by private individuals . . . . Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content." *Id.* at 641-642.

In *Republican Party of Minnesota v. White*, 536 U.S. 765, 122 S.Ct. 2528

(2002), the Supreme Court found unconstitutional a provision barring candidates for judicial office from expressing their views on the disputed legal or political issues. The prohibition, known as the announce clause, was based on the American Bar Association Model Code of Judicial Conduct and adopted by the Minnesota Supreme Court. Incumbent judges and candidates for judicial positions were subject to its prohibition. A violation of the rule could result in disciplinary action against the attorney or incumbent judge. The Court found no compelling interest in restricting a candidate's right to freely express his views regarding issues of concern to the voters.

In *Virginia State Board of Pharmacy,* 425 U.S. 748, the Court recognized the protections afforded under the First Amendment apply to the receiver as well as the speaker of the information. It is the communication itself which is protected by the Constitution. The Court stated:

> Freedom of speech presupposes a willing speaker. But where a speaker exists, as is the case here, the protection afforded is to the communication, to its source and to its recipients both. This is clear from the decided cases . . . [T]he Court upheld the First Amendment rights of citizens to receive political publications sent from abroad. . . . [W]e acknowledged that this Court has referred a First Amendment right to "receive information and ideas." and that freedom of speech "'necessarily protects the right to receive,'"

*Id.* at 757. (citations omitted).

Further, in *White*, of significance to the Court was the collateral effect the announce clause had on the electorate by "plac[ing] most subjects of interest to the voters off limits" and allow[ing] the State to "conduct elections under conditions of state-imposed voter ignorance." *Id.* at 787,788.

The canon at issue is aimed at content-based speech. It does not prohibit all speech, only "disparaging" speech relating to the "competency of other rehabilitation counselors (including judgments made, methods used or quality of rehabilitation

10

plans)." All "discussion" which "disparages" another counselor in whatever context - social setting, lawsuit, office, telephone conversation - is strictly prohibited. Mr. Arceneaux argues the canon is restricted only to communications to the injured worker and this restriction somehow saves the canon from a constitutional challenge. Mr. Arceneaux contends:

> [T]here is nothing in the underlying court's decision, the Board's decision, or anywhere else, that precludes one vocational rehabilitation counselor from discussing another in a case before this Court or any other. The proscription of the ethical canon is limited. Presumably, those who adopted that canon had a specific purpose in mind. Perhaps it was to avoid presenting an injured worker with confusion. Perhaps it was to prevent any disruption of getting an injured employee back to work. Regardless of its purpose, it is restrictive and it is limited.

First, we find no such limitation on the face of the statute. Use of the terms "their client" in the canon can reasonably be interpreted to include a client of Mr. Hebert; and, second, interpreting the canon to restrict information to the injured worker only would allow everyone to receive the information regarding the competency of the vocational rehabilitation counselor except the client who is receiving the substandard service. Like the announce clause, in *White*, the canon places the subject which is of most interest to the client, namely the quality of services provided to him, off-limits. It is inconceivable that a vocational rehabilitation counselor, who is hired to render an opinion, cannot discuss the subject upon which he was called to opine. Enforcement of this provision will deprive the injured worker of essential facts relevant to his full recovery; and will deprive Mr. Hebert of his free speech right to express his opinion regarding a matter he is uniquely qualified to speak upon.

We acknowledge the Board has an interest in promoting camaraderie among professional counselors. The Code of Ethics, General Provision § 1600 (C) states the canons serve as "general standards of an aspirational and inspirational nature that reflect the fundamental caring and respect which professionals share. They are

11

maxims designed to serve as models of exemplary professional conduct." Mr. Arceneaux in a letter to the Board expressed his "concern[] about the growing acrimony within the profession, especially in the workers' compensation arena." However, as applied in this case, the Board's regulation silences all vocational rehabilitation counselors from rendering professional opinions regarding the quality of services rendered to injured workers. The regulation in operation infringes upon workers' rights to essential information concerning their health and welfare, shields abuses in the health care system from public scrutiny and "sets [the] First Amendment jurisprudence on its head." *White*, 536 U.S. at 781. Moreover, the role that vocational rehabilitation counselors play in the workers' compensation scheme make it all the more imperative that they be allowed to freely express their professional opinion without fear of repercussion or derision. The Board's responsibility is to advance the profession not to impede the communication of relevant information to those for whom the system is meant to benefit. Although, the Canons are designed to achieve the highest ideals in the profession, we can find no compelling State interest which cannot be achieved by less onerous means. The right to freely express a professional opinion must take precedence over any potentially offensive statements regarding the work of other colleagues. Further, the right of the injured worker to receive information regarding the services provided to him overrides any ideals sought to be achieved by the Board. In *Page v. Page,* 98-1625, p. 6 (La.App. 1 Cir. 9/24/99), 762 So.2d 18, 22, the first circuit noted: "Throughout the rehabilitation process, close communication should be maintained with the client/injured worker who is, after all, the beneficiary of the services. The culminating part of the evaluation process is an information session during which the counselor reviews the fruits of his research in order that there be a mutual understanding of the means and purpose of the

12

rehabilitation process. Furthermore, a communication session provides for the opportunity to ascertain the accuracy of the counselor's research as well as recent changes that may affect the process."

The Board's application of its ethical canon interferes with the "primary obligation of licensed rehabilitation counselors . . . to their clients," is not in keeping with the goals and responsibilities mandated under the La.R.S. 37:3441 et seq. and strikes at the very foundation of one of the essential goals under the workers' compensation laws, i.e., securing meaningful rehabilitation services for injured workers so that they may return to the work force. *See* Code of Ethics, General Provision §1600 (B). By imposing sanctions under this canon, the Board not only impedes the free flow of information but imposes a code of silence among professional counselors to the detriment of injured employees. The Board's sweeping ban which covers all "speech" which the Board may define as "disparaging" is not narrowly tailored to avoid "unnecessarily circumscribing protected expression." It also does not serve a compelling state interest, "as strict scrutiny requires." *White*, 536 U.S. 765. As noted, the "aspirational" interest underpinning the adoption of the ban on Mr. Hebert's speech is not sufficiently compelling to override the State's overaching interest in protecting the free speech of Mr. Hebert and the right of injured workers to essential health information.

We are satisfied, in addition to abuse of process, Mr. Hebert's petition contains facts sufficient to show he may be successful in asserting a claim against Mr. Arceneaux and the Board for violating his First Amendment right. Louisiana Code of Civil Procedure Article 971 does not demand dismissal of complaints seeking redress for constitutional violations. However, Mr. Hebert's petition, as presently drafted, does not specify the nature of his claims with particularity. In the interest of

13

justice, we remand to allow Mr. Hebert to amend his pleadings to particularize the claims and facts demonstrating a constitutional deprivation under color of state law. *Board of Examiners of Certified Shorthand Reporters v. Neyrey,* 542 So.2d 56 (La.App. 4 Cir.), *writ denied*, 548 So.2d 1231 (La. 1989); 42 U.S.C. § 1983.

***Exception of Improper Venue***

The trial court dismissed the Board on an exception of venue, finding since Mr. Arceneaux was dismissed, suit against the Board was only proper in East Baton Rouge Parish. The parties agreed if Mr. Arceneaux was a party to the suit, venue in Lafayette Parish was proper. Because we find dismissal of Mr. Arceneaux under La.Code Civ.P. art. 971 was improper, venue in Lafayette Parish is proper as to the Board. We reverse the judgment of the trial court dismissing the Board on an exception of venue.

**DECREE**

Based on the foregoing review of the record, we reverse the judgment of the trial court dismissing Glenn M. Hebert's claims against Sy Arceneaux under La.Code Civ.P. art. 971. We reverse the judgment of the trial court dismissing the Louisiana Licensed Professional Vocational Rehabilitation Counselors Board of Examiners on an exception of venue. We remand to allow Mr. Hebert to amend his pleadings to particularize the claims and facts demonstrating a constitutional deprivation under color of state law and for further proceedings consistent with this opinion. All costs of this appeal are assessed against Mr. Arceneaux and the Board.

**REVERSED.**

14