**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1234**

D.C. DARCEY R. WALRAVEN,

        Plaintiff - Appellant,

    v.

NC BOARD OF CHIROPRACTIC EXAMINERS,

        Defendant - Appellee,

    and

ROY COOPER, In his official capacity as Attorney General for the State of North Carolina Department of Justice; RICHARD DAVIS, In his official capacity as the duly appointed member of the North Carolina Board of Chiropractic Examiners; THOMAS BROWN, In his official capacity as the duly appointed member of the North Carolina Board of Chiropractic Examiners; DENNIS HALL, In his official capacity as the duly appointed member of the North Carolina Board of Chiropractic Examiners; JAMES BROWN, In his official capacity as the duly appointed member of the North Carolina Board of Chiropractic Examiners; SKIP BRADLEY, In his official capacity as the duly appointed member of the North Carolina Board of Chiropractic Examiners; ROBERT STROUD, In his official capacity as the duly appointed member of the North Carolina Board of Chiropractic Examiners; STATEN WILCOX, In his official capacity as the duly appointed member of the North Carolina Board of Chiropractic Examiners; R. STEVE BOWDEN, In his official capacity as the duly appointed member of the North Carolina Board of Chiropractic Examiners,

        Defendants.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, District Judge.  (3:04-cv-00321)

Argued:  January 29, 2008          Decided:  April 9, 2008

Before GREGORY and SHEDD, Circuit Judges, and Patrick M. DUFFY, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** James F. McCarthy, III, KATZ, TELLER, BRANT & HILD, Cincinnati, Ohio, for Appellant.  James C. Fuller, Jr., Davidson, North Carolina; Vance Callahan Kinlaw, Greensboro, North Carolina, for Appellee.  **ON BRIEF:** Prosser D. Carnegie, MCINTOSH LAW FIRM, P.C., Davidson, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Darcey R. Walraven, D.C., ("Walraven") appeals the order of the district court denying her motion for summary judgment and granting the Appellees' cross-motion for summary judgment. We affirm.

I.

In July 2004, Walraven filed her complaint and motion for temporary restraining order and injunction against Roy Cooper, in his official capacity as Attorney General for the State of North Carolina,[1] and Richard Davis, Thomas Brown, Dennis Hall, James Brown, Skip Bradley, Robert Stroud, Jr., Staten Wilcox, and R. Steve Bowden, in their official capacities as the duly appointed members of the North Carolina Board of Chiropractic Examiners (collectively "the Board"). In her complaint, Walraven challenged certain North Carolina statutes that limit the advertising that she may undertake in the pursuit of her profession as a chiropractor.[2]

_____

[1]Cooper moved to be dismissed, asserting that the North Carolina Attorney General does not enforce the statute and rules regarding chiropractic practice in North Carolina, and Walraven stipulated to his dismissal.

[2]Specifically, Walraven challenged sections 90-401 and 90-401.1 of the North Carolina General Statutes and section 10.0303(a)-(b) of the North Carolina Administrative Code. Section 90-401 of the North Carolina General Statutes provides:

> A health care provider shall not financially compensate in any manner a person, firm, or corporation for recommending or securing the health care provider's

employment by a patient, or as a reward for having made a recommendation resulting in the health care provider's employment by a patient. No health care provider who refers a patient of that health care provider to another health care provider shall receive financial or other compensation from the health care provider receiving the referral as a payment solely or primarily for the referral. This section shall not be construed to prohibit a health care provider's purchase of advertising which does not entail direct personal contact or telephone contact of a potential patient.

N.C. Gen. Stat. § 90-401 (1994). Section 90-401.1 provides:

It shall be unlawful for a health care provider or the provider's employee or agent to initiate direct personal contact or telephone contact with any injured, diseased, or infirmed person, or with any other person residing in the injured, diseased, or infirmed person's household, for a period of 90 days following the injury or the onset of the disease or infirmity, if the purpose of initiating the contact, in whole or in part, is to attempt to induce or persuade the injured, diseased, or infirmed person to become a patient of the health care provider. This section shall not be construed to prohibit a health care provider's use of posted letters, brochures, or information packages to solicit injured, diseased, or infirmed persons, so long as such use does not entail direct personal contact with the person.

N.C. Gen. Stat. § 90-401.1 (1994). Lastly, the relevant portion of the North Carolina Administrative Code provides:

(a) In-Person and Telephone Solicitation of Auto Accident Victims. In order to protect the public from misrepresentation, coercion or undue influence, it shall be unlawful for a doctor of chiropractic, or the doctor's employee, to initiate direct personal contact or telephone contact with any person who has been injured in a motor vehicle collision, or with any person residing in the injured person's household, for a period of 90 days following the collision, if the purpose of initiating contact is, in whole or part, to solicit the injured person to become a patient of the doctor.

(b) Acceptance of Referrals From Runners. It shall be

4

These statutes preclude Walraven and/or anyone acting on her behalf from soliciting, either in person or telephonically, prospective patients who may need chiropractic treatment as a result of a motor vehicle accident for a period of 90 days following the accident.

In her complaint, Walraven asserted that these North Carolina statutes constitute an unreasonable and unconstitutional restriction on commercial speech in violation of the First Amendment to the United States Constitution. In support of her challenge, Walraven proposed a less restrictive alternative to North Carolina's regulatory scheme; specifically, Walraven proposed a regulatory scheme akin to Ohio's that would permit the kind of marketing that she seeks to undertake.[3]

In response, the Board asserted that North Carolina's regulatory scheme is a lawful restriction on commercial speech reasonably tailored to achieve substantial government interests, which include the following: (1) to eliminate overreaching or the

---

unlawful for a doctor of chiropractic to accept as a patient any person injured in an automobile accident who was referred by a runner. As used in this Rule, the term "runner" means any person, firm or corporation that routinely obtains the names of injured persons from motor vehicle accident reports or other public records and then contacts those persons to induce them to seek medical or chiropractic treatment or pursue legal claims.

21 N.C. Admin. Code 10.0303(a)-(b) (1994).

[3]Walraven moved to North Carolina from Ohio, where she had been permitted, pursuant to Ohio Admin. Code § 4734-9-02 and certain regulations contained therein, to solicit patients telephonically following an accident.

exercise of undue influence by health care providers; (2) to preserve the privacy of injured or ill persons and their immediate families; (3) to protect against false or misleading advertising and "bait and switch" advertising practices; (4) to protect against one-sided presentations that encourage speedy and uninformed decision-making concerning the availability, nature, and price of health care services and the necessity of obtaining such services; (5) to minimize situations where the exercise of professional judgment by a health care provider is clouded by pecuniary self-interest; (6) to protect persons whose injury or illness makes them more vulnerable and for whom telephonic solicitation would add to their level of distress; and (7) to maintain standards among members of licensed health care providers.

The district court denied Walraven's motion for a temporary restraining order as well as her motion for a preliminary injunction. The parties subsequently filed cross-motions for summary judgment. In a written order dated February 27, 2007, the district court denied Walraven's motion for summary judgment and granted the Board's motion for summary judgment, finding that the Board satisfied its burden to establish the constitutionality of the North Carolina statutes at issue.

II.

A.

This court reviews an award of summary judgment *de novo*. <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 283 (4th Cir. 2004) (en banc). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

B.

The Supreme Court has extended the protections of the First Amendment to purely commercial speech; nevertheless, the Court has afforded commercial speech "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression." <u>Ohralik v. Ohio State Bar Ass'n</u>, 436 U.S. 447, 456 (1978); <u>see also</u> <u>Florida Bar v. Went For It, Inc.</u>, 515 U.S. 618, 623 (1995) (quoting the same). In view of this, the regulation of commercial speech is subject to intermediate scrutiny under the traditional framework set forth by the Supreme Court in <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.</u>, 447 U.S. 557, 566 (1980). <u>See Adventure Comms., Inc. v. Kentucky Registry of Election Fin.</u>, 191

7

F.3d 429, 439 (4th Cir. 1999) (citing <u>Central Hudson</u>, 447 U.S. at 566). In <u>Central Hudson</u>, the Court stated:

> In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 566. Thus, for a commercial speech regulation to be constitutionally permissible under the <u>Central Hudson</u> test, the speech in question must concern lawful activity and not be misleading; the asserted governmental interest to be served by the regulation must be substantial; and the regulation must be narrowly drawn. <u>See</u> <u>Florida Bar</u>, 515 U.S. at 623-34; <u>see also</u> <u>Ficker v. Curran</u>, 119 F.3d 1150, 1152 (4th Cir. 1997) (citing <u>Central Hudson</u> and <u>Florida Bar</u>). "The party seeking to uphold a restriction on commercial speech carries the burden of justifying it." <u>Bolger v. Youngs Drug Prods. Corp.</u>, 463 U.S. 60, 71, n. 20 (1983).

### III.

Here, as the district court concluded, there is no question that the first two prongs of the <u>Central Hudson</u> test are satisfied. That is to say, it is clear that the non-deceptive advertising of chiropractic services is protected speech under the First

8

Amendment, and North Carolina has several legitimate and substantial governmental interests in regulating solicitation concerning chiropractic services. Thus, the real issue is whether North Carolina's regulatory scheme directly advances the governmental interests asserted and whether it is more extensive than is necessary to serve that interest.

To establish that the regulation directly advances the governmental interests asserted, the Board must "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." Edenfield v. Fane, 507 U.S. 761, 770-71 (1993). The Supreme Court has permitted governmental bodies to justify speech regulations by reference to studies and/or anecdotal evidence. In fact, the Court has permitted litigants to justify speech regulations with reference to "studies and anecdotes pertaining to different locales altogether . . . ." Florida Bar, 515 U.S. at 628 (citations omitted).

Here, the district court agreed with Walraven that "the regulations at issue may not materially advance some of the governmental interests that the Board asserts." Walraven v. Cooper, et al, No. 3:04-cv-321-W, 2007 WL 656284, at *2 (W.D.N.C. Feb. 27, 2007). Nevertheless, the district court determined that the challenged regulations materially advance at least one substantial governmental interest – that is, "the protection of a particular segment of the public from invasive (and potentially

9

coercive and/or misleading) solicitation tactics under circumstances in which they may be particularly vulnerable." Id. The court quoted the following passage from its previous order denying Walraven's motion for a preliminary injunction:

> The [Board] proffered evidence in the form of affidavits, exhibits and testimony, which illustrates the type of harassment personal injury victims were often subject to in the days following an injury, prior to the enactment of the various statutes in question. The evidence offered by the [Board] also show[s] that victims of personal injury are often in a heightened state of vulnerability and distress in the days following an injury, and that the statutes in question have provided some form of relief from in-person and telephone coercion by chiropractors or runners.

Id. at *3 (quoting the court's July 23, 2004 order denying preliminary injunction).

Having found the third prong of the Central Hudson test satisfied, the district court next considered the final prong of the Central Hudson test, namely, whether the regulatory scheme is more extensive than is necessary to serve the governmental interest. The district court noted that to establish this final prong, the Board needed to demonstrate a reasonable "fit between the legislature's ends and the means to accomplish those ends, a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served, that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective." Florida Bar,

10

515 U.S. at 632 (quoting <u>Bd. of Trs. of State Univ. of N.Y. v. Fox</u>, 492 U.S. 469, 480 (1989)) (internal quotation marks omitted).

In addressing the final prong of the <u>Central Hudson</u> test, the district court first evaluated whether the challenged statutes are overly broad, such that they restrict more speech than is necessary to accomplish the state's objectives. In rejecting Walraven's assertion that the statutes amount to a blanket ban, the court stated:

> While the Court agrees that the challenged regulations significantly burden Dr. Walraven's ability to advertise by effectively precluding all telephonic contact with the class of persons who would be most receptive to a personal invitation to see a chiropractor, this is a far cry from a "blanket ban" on Dr. Walraven's commercial speech. Dr. Walraven retains the ability to reach prospective car accident clients by means of the mass media and even targeted mailings, and she may solicit potential clients in-person or by telephone so long as she does not target them on account of their status as recent car accident victims. By singling out for regulation only speech which is particularly susceptible to fraud and overreaching (i.e., in-person and telephonic solicitation) and which is targeted at a protected class (i.e., recent victims of car accidents), the North Carolina regulations are easily distinguished from the laws of other jurisdictions which have been struck down as overly broad in the cases cited by Dr. Walraven.

<u>Walraven</u>, 2007 WL 656284, at *3.

The court next examined whether Walraven's proposed less-restrictive alternative would be as feasible and effective as North Carolina's current scheme. In considering Walraven's proposed script, from which she asserted that her contracted telemarketers would be instructed not to deviate, the court noted that "the

11

content of a telephonic solicitation is inherently more difficult to regulate than the content of a written solicitation – a distinguishing feature that may justify a prophylactic ban of the former but not the latter." Id. at *4 (citing Shapero v. Kentucky Bar Assoc., 486 U.S. 466, 476 (1988); Nat'l Funeral Servs., Inc. v. Rockefeller, 870 F.2d 136, 144 (4th Cir. 1989); and Gregory v. Louisiana Bd. of Chiropractic Exam'rs, 608 So.2d 987 (La. 1992)). The district court further noted:

> Written solicitations are capable of being screened for compliance by a state regulatory authority before they are ever mailed. By contrast, telephonic solicitations (even scripted ones) do not take place in a controlled environment and improper deviations from the script are not susceptible to detection until after the harm is done (provided that a disgruntled consumer even bothers to report the violation to the relevant authorities), and then the only recourse in the event of a violation likely would be against a party (the "runner" or telemarketer) not necessarily subject to the Board's disciplinary jurisdiction. Furthermore, even assuming that Dr. Walraven's alternative would be effective at ensuring the truthful and tactful content of the solicitation, her proposal does not address the concerns that the Board has advanced for protecting the privacy of car accident victims from a barrage of invasive and subtly coercive phone calls in the immediate wake of experiencing a traumatic life event.

Id. Based on the foregoing, the district court concluded that the Board satisfied its burden under the Central Hudson test to demonstrate that North Carolina's regulatory scheme directly advances the governmental interest asserted and is not more extensive than is necessary to serve that interest.

12

IV.

Having thoroughly reviewed the district court's order and the parties' briefs and submissions on appeal, and having heard oral argument in this case, we conclude, based on the reasons set forth by the district court in its order dated February 27, 2007, that the Board satisfied its burden under the <u>Central Hudson</u> test to establish the constitutionality of the North Carolina regulations at issue.  Accordingly, we affirm the district court's award of summary judgment in favor of the Board and denial of summary judgment in favor of Walraven.

<u>AFFIRMED</u>

13